Filed 3/29/24  Honegger v. Willhite CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| GREGORY W. HONEGGER, as Trustee, etc., <br><br> Petitioner and Respondent, <br><br> v. <br><br> CARIE R. CLINE WILLHITE et al., <br><br> Objectors and Appellants. | F084599 <br><br> (Super. Ct. No. BPB-21-002138) <br><br> **OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  Andrew Kendall, Judge.

Worthington Law, Brian P. Worthington; Hernandez & Associates, Manuel C. Hernandez; and Law Offices of Steven Gibbs and Steven G. Gibbs for Objectors and Appellants.

Darling & Wilson and Joshua G. Wilson for Plaintiff and Respondent.

-ooOoo-

Appellants, Carie R. Cline Willhite and Daymon A. Cline, appeal after the probate court granted summary judgment to respondent Gregory W. Honegger, the successor trustee of the Cline Family Trust, on a petition Honegger filed for construction of the trust and related instructions. Appellants initially objected based on a narrow legal principle, but eventually moved to amend the objection to challenge certain modifications to the trust. The probate court denied the motion to amend and a request to delay the summary judgment proceedings and ultimately granted summary judgment to Honegger, resulting in appellants taking nothing from the trust. Appellants contend the probate court erred. For the following reasons, we reverse the grant of summary judgment and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Hal P. Cline (Hal) and Claudette Cline (Claudette)[1] were a married couple who, in 2007, entered into a trust agreement regarding their marital assets. Appellants are the only children of the marriage. The trust agreement spans nearly 70 pages. We therefore only highlight provisions relevant to disputes between the parties in this opinion.

*Terms of the Cline Family Trust*

The Cline Family Trust was set up to be revocable during the period both Hal and Claudette were alive. The full trust was designated as the Settlors' Trust (Trust Agreement). Upon the death of either spouse, the Trust Agreement would be divided into multiple subtrusts, including a Survivor's Trust, a Marital Trust, and a Credit Trust. Under article 2.7 of the Trust Agreement, "Upon the death of either Settlor, this Trust Agreement and all trusts created hereunder shall become irrevocable and unamendable, except that the Surviving Spouse shall retain, during his or her lifetime, the rights of

---

[1]     We refer to some individuals by their first name for clarity, as several parties share the same last name.

revocation and amendment with respect to the whole of the Survivor's Trust and all the provisions of the Trust Agreement relating to the Survivor's Trust."

The Survivor's Trust was designed to provide the surviving spouse with income reasonably necessary for their maintenance and support. It was funded with both spouses' interest in specific personal property and "that amount of the remainder of the Balance as shall equal the Surviving Settlor's interest therein."

The surviving spouse retained the right to terminate the Survivor's Trust and to gift portions of the trust to others. In addition, under article 4.3, subdivision (c) of the Trust Agreement, the surviving spouse was "given a Testamentary General Power of Appointment over the Survivor's Trust" allowing them to "distribute all or any portion of the principal and undistributed income of the Survivor's Trust as the Surviving Spouse shall appoint" upon death. Article 8.2 of the Trust Agreement defined this general power as one that "may be exercised in favor [of] any person or Charitable organization, without limitation."

Upon the death of the surviving spouse, the Trust Agreement stated the Survivor's Trust would convert to the Administrative Survivor's Trust and required that the trustee "(i) pay all taxes and expenses relating to the Administrative Survivor's Trust, (ii) distribute the portion of the Administrative Survivor's Trust that the Surviving Spouse has effectively appointed pursuant to paragraph (c) …, and (iii) distribute the balance of the Administrative Survivor's Trust … as provided" in additional instructions.

The Marital Trust was to be funded with "assets equal in value to the minimum dollar amount which if subtracted as a marital deduction from the value of the Deceased Spouse's gross estate … would result in the lowest federal estate tax payable after" taking into account certain enumerated factors, with the remaining assets going to the Credit Trust, which was functionally treated in the same manner as the Marital Trust. The net

3.

income from the Marital and Credit Trusts was to be paid in at least quarterly installments to the surviving spouse.

The surviving spouse was permitted to draw principal from the Marital Trust as necessary. In addition, under article 4.4, subdivision (b) of the Trust Agreement, the surviving spouse was granted a Testamentary Limited Power of Appointment that was executed in the same way as the Testamentary General Power of Appointment. Unlike the Testamentary General Power of Appointment, however, the Testamentary Limited Power of Appointment could "be exercised only in favor of the holder's spouse, issue or a Charitable Organization."

Upon the death of the surviving spouse, the Trust Agreement stated the Marital Trust would convert to an administrative form and required that the trustee "(i) pay all taxes and expenses relating to the Administrative Marital Trust(s), (ii) distribute the portion of the Administrative Marital Trust(s) that the Surviving Spouse has effectively appointed pursuant to paragraph (b) …, and (iii) distribute the balance of the Administrative Marital Trust(s) … as provided" in additional instructions. A similar structure covered the Credit Trust.

Additional instructions provided that the remaining balances identified in step (iii) would be divided "by right of representation, into separate trust shares, one trust share for each of Settlors' children then living." The Trust Agreement then provided additional distribution instructions should the children and/or any grandchildren fail to survive the settlors.

*Claudette's Death, Hal's Exercise of Appointments, and Hal's Death*

In 2014, Claudette died. This triggered the creation of the subtrusts. On September 8, 2020, Hal died. On October 16, 2020, Honegger's counsel mailed a notice pursuant to Probate Code section 16061.7 to appellants. The notice included a copy of the Trust Agreement and two instruments showing Hal had exercised his Testamentary

4.

General and Limited Powers of Appointment prior to his death. The first exercise of these powers was dated July 11, 2020. The document, containing handwritten notes, purported to transfer one-half of the entire trust (meaning the collection of all subtrusts) to St. Jude Children's Research Hospital and the other one-half to Sandra Crosby, identified as Hal's niece. The handwritten additions were dated and initialed, and the document was signed and dated by Hal and witnessed by Honegger's counsel and one Vincent Oddo. The second exercise was dated July 20, 2020, and included the same instructions but without any handwritten additions—essentially a restatement of the first exercise. The second exercise was signed and dated by Hal and notarized.

*Honegger's Petition*

On February 17, 2021, Honegger filed a petition to determine construction of a trust and for instructions to the trustee pursuant to Probate Code section 17200, subdivision (b)(1) and (4) (the petition). The petition provided a brief background and history related to the Trust Agreement before outlining the events leading to the petition. According to the petition, Hal executed an exercise of power of appointment on July 11, 2020. It further alleged the Trust allowed such an appointment based on the General and Limited Powers of Appointment. Hal allegedly "did not want his children to receive anything" and attempted to leave his estate to St. Jude Children's Research Hospital. Hal then modified the attempt to leave half to St. Jude Children's Research Hospital and half to Sandra Crosby but did not specify from which trusts these payments would be made.

In a declaration submitted with the petition, counsel who prepared documents relating to this action stated, "There was no opportunity to prepare a document that would specifically identify that the one-half of the estate" going to St. Jude Children's Research Hospital would come from the Marital and Credit Trusts and that "the other one-half of the trust estate" would come from the Survivor's Trust. Similarly, the declaration stated that "the handwritten change to the Exercise of Power of Appointment" should be

5.

interpreted in that manner and that the relevant shares "will be equal since Hal failed to divide the assets of the Trust into the required subtrusts … following Claudette's death." Honegger thus requested that the "assets of the Survivor's Trust, comprising one-half of the combined Trust assets, be distributed to Sandra Crosby," the "assets of the Marital Trust, if any, and the Credit Trust, comprising one-half of the combined Trust assets, be distributed to St. Jude Children's Research Hospital," and that the court instruct Honegger to so act. Honegger attached a copy of the Trust Agreement, the purported exercise of the appointment, and other relevant documents to the petition.

*Appellants' Objection and Additional Procedural History*

Appellants objected to the petition on April 27, 2021. Their objection asserted the distribution plan constituted a decanting under Probate Code section 19507 et seq. and that Honegger had failed to comply with aspects of that statutory scheme. Appellants then requested a continuance of the hearing on the petition to permit proper service under the statutory scheme and requested that an amended petition be filed that complied with the statutory requirements. In addition, appellants requested an accounting that showed the amounts properly contained in each subtrust and requested that the court require Honegger to brief whether the court can "add language" concluding Hal properly sought to disinherit his children "based upon the written power of appointment." Finally, appellants sought information on whether Honegger's counsel should be disqualified and requested the court "provide instructions … regarding whether a proposed exercise of the decanting power is permitted … and is consistent with the fiduciary duties of the authorized fiduciary."

In June 2021, Honegger replied to the objection. In that reply, Honegger argued the objection did not challenge any material allegation in the petition because there was no exercise of the decanting power being alleged. Honegger further argued appellants could not assert affirmative relief in their objection, were not entitled to an accounting

6.

because they were not beneficiaries, could not force Honegger to account for Hal's conduct as trustee, should be required to file their own petition to seek any relief, and lacked standing to challenge counsel's role in the case.

Subsequently, in December 2021, Honegger moved for summary judgment. Honegger attached the two documents showing the purported execution of Hal's powers of appointment and a declaration from counsel explaining how the changes and signing took place, but not the underlying Trust Agreement. Rather, Honegger argued that appellants' objection did not challenge the underlying facts asserted in the petition and, thus, those facts could be relied upon by the probate court to summarily resolve the case. The probate court was thus requested to take judicial notice of the petition and objection.

Appellants opposed the motion for summary judgment on February 10, 2022. However, the basis for the opposition was a claim that "a continuance is necessary to allow [appellants] to obtain additional essential evidence." Appellants alleged that certain discovery had not been completed which was needed to oppose the summary judgment motion and requested a continuance pursuant to Code of Civil Procedure section 437c. In arguing for a continuance, appellants noted that several changes were made to the trust when Hal was nearing the end of his life and when Sandra Crosby was his caregiver: that Hal had not properly separated Claudette's portion of the trust and that Sandra Crosby had become the beneficiary of the trust in that time. Appellants alleged this showed a potential lack of capacity. Appellants also claimed discovery was necessary to determine what part of the trust assets had been Claudette's, as it was unclear whether Hal "even had the ability to completely take away her intended beneficiaries to give all of her assets to a charity."

Around the same time, appellants filed an ex parte motion to compel discovery. This motion noted that discovery had first been requested around December 2021 and a meet and confer regarding perceived inadequacies in the responses was sent on

7.

January 27, 2022.  Appellants alleged the discovery at issue was relevant in part due to the fact the petition sought to validate changes to the trust, and in part because of potential issues of undue influence regarding Hal's exercise of his powers of appointment.  Honegger opposed, arguing the discovery requested was not relevant to any issue that had been raised in the case.  Honegger alleged this was so because appellants had not challenged any material facts in the petition and had been so informed early in the case.

The probate court held a hearing on the ex parte portion of the discovery motion.  At that hearing, the court ordered a brief continuance of the summary judgment hearing and set the hearing on the discovery motion for the same day.  The court additionally ordered appellants to refile their motion to continue summary judgment and file any motion to continue the trial in time to hear that motion with the discovery and summary judgment motions.  Any request by appellants to amend their opposition to the petition or file any other actions was to be completed in time to have those heard at the same time.

In response to this order, appellants refiled their motion to continue summary judgment and sought to file an amended objection to the petition.  In this amended objection, appellants alleged facts "controverting [Honegger's] factual allegations or assumptions," including claims Hal did not properly exercise his powers of appointment in part because he was subjected to undue influence and in part because he was under hospital care at that time.  Appellants included several allegations of fact supporting their claims of undue influence and improper behavior by Sandra Crosby prior to Hal's death.

*The Hearing and the Probate Court's Order*

On March 30, 2022, the probate court heard all of the matters discussed above.  Appellants argued their discovery motions first, alleging they needed discovery to properly respond to the summary judgment motion.  Appellants contended the discovery was relevant to their desire to have the court consider Hal's capacity, meaning, "whether

or not there was undue influence." Appellants further argued the capacity issue was critical to "whether or not the petition should be granted as proffered to the Court at this point."

Appellants then turned to their requests to continue the summary judgment motion and hearing on the petition, repeating that discovery was necessary to resolve the petition. Finally, appellants argued the court should grant their request to amend their objection to the petition. Appellants claimed they had originally thought the only way the contested changes could be made were through the statutory decanting process, but it had since become clear that other issues—including the failure to properly separate the trust assets and the scope of the alleged undue influence and lack of capacity—had redefined the nature of their objection.

Honegger argued the requests were too little, too late, and too far afield of the original objection to be permitted. Honegger argued appellants had known of the assertion they had failed to place any facts in the petition at issue through their original objection since Honegger's reply and that the discovery responses further identified that failure. Additionally, Honegger claimed appellants had failed to satisfy the procedural requirements for amending their objection, the time for them to file a new objection had passed, and without such an amendment, the court could proceed to summarily resolve the petition based on the lack of relevant factual disputes. To Honegger, all motions turned on whether the court granted appellants' motion to amend their objection to the petition. If it did not, the discovery was irrelevant, and the court could and should grant summary judgment.

The probate court agreed with Honegger's argument that all of the motions turned on whether to grant the amendment. On that first issue, the court found no showing the amendment was proper. The court noted that appellants had failed to provide any meaningful argument in their motion—they cited only to the relevant rule and included

9.

no facts or declarations indicating "when the facts giving rise to the amended objections were discovered and why the amendment was not made sooner." The court further found prejudice to Honegger in allowing such an amendment "at this stage on the eve of trial." From that point, the court denied the motions to amend the objection and continue the summary judgment motion hearing and denied the discovery motion on the ground no pleading placed relevant facts at issue and, thus, the discovery was irrelevant. Finally, the court granted the summary judgment motion, stating there were no triable issues of material fact and that Hal "validly exercised his general power of appointment over the survivor's trust … and exercised his special power of appointment over the credit trust and the marital trust." The court concluded that appellants "have admitted the material allegations in the petition by failing to controvert any of the allegations in their objection."

On May 11, 2022, the court entered judgment. The court made three findings:

"1.     That … Honegger is the Successor Trustee of the Cline Family Trust [the Trust Agreement], dated March 13, 2007 (the 'Trust');

"2.     That … Hal … validly and effectively executed a power of appointment on July 11, 2020 over his Survivor's Trust share, comprising one-half (1/2) of the combined Trust asset, directing distribution to Sandra Crosby.

"3.     That … Hal … validly and effectively executed a power of appointment on July 11, 2020 over the assets of the Marital Trust, if any, and the Credit Trust, comprising one-half (1/2) of the combined Trust assets, directing distribution to St. Jude Children's Research Hospital."

Based on these findings, the court granted the petition and ordered one-half of the Trust Agreement assets be distributed to Sandra Crosby and the other one-half to St. Jude Children's Research Hospital.

This appeal timely followed.

10.

# DISCUSSION

On appeal, appellants focus on two primary assertions of error. First, appellants contend the probate court improperly granted summary judgment because Honegger failed to meet his initial burden of production. This argument focuses upon whether Code of Civil Procedure section 431.20 applies to objections in probate proceedings and whether the petition's facts were properly deemed admitted. Appellants also contend the Trust Agreement could not be construed to permit Hal's power of appointment if both children were living.

Second, appellants contend the probate court abused its discretion in denying a continuance to conduct further discovery under Code of Civil Procedure section 437c, subdivision (h). This argument focuses upon whether granting such a request is "virtually mandated" and whether the court had a duty to consider undue influence regardless of issues raised in the objection. The argument concludes with an assertion that if amending the objection was required, the court abused its discretion in denying the request because there was no prejudice to Honegger.

The general complexity of the motions and disputes raised with the probate court along with the many underdeveloped positions presented both to the probate court and on appeal regarding the nature of the court's authority and the scope of the proceedings makes the framing of this case on appeal both awkward and poorly structured. We therefore focus our opinion in a more streamlined manner and less in direct response to appellants' formulation of the disputes.

## *Summary Judgment Principles and Standard of Review*

A trial court properly grants summary judgment when there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A plaintiff moving for summary judgment bears the initial burden to show there is no defense to the action—that is, the "party has proved each

11.

element of the cause of action entitling the party to judgment." (*Id*., subds. (a), (p)(1).) Once the plaintiff clears this initial hurdle, the burden shifts to the defendant to demonstrate a triable issue of material fact. (*Id*., subd. (p)(1).)

"We review the trial court's ruling on a summary judgment motion de novo, liberally construing the evidence in favor of the party opposing the motion and resolving all doubts about the evidence in favor of the opponent. [Citation.] We independently examine the record to determine whether there are triable issues of material fact and whether the moving party is entitled to summary adjudication as a matter of law." (*Doe v. Department of Corrections & Rehabilitation* (2019) 43 Cal.App.5th 721, 732.)

### *Appellants Properly Challenged Factual Aspects of the Petition*

The crux of Honegger's motion for summary judgment in this case was a claim that appellants' objection did not contest any material facts alleged in the petition. According to Honegger, this failure triggered the application of Code of Civil Procedure section 431.20, which deems all material allegations not controverted in an answer shall be taken as true (Code Civ. Proc., § 431.20, subd. (a)).

Honegger's argument concedes that in order for Code of Civil Procedure section 431.20 to apply—if it can at all[2]—the allegations in the petition must be uncontested. Appellants heavily attack the application of Code of Civil Procedure

---

[2] The parties have cited, and this court has found, no case since the Probate Code was reenacted that applied Code of Civil Procedure section 431.20 to a probate proceeding—let alone in a manner granting the petition against an objector without resolving the objection. We note that application of the precursor to Code of Civil Procedure section 431.20 in probate matters did occasionally occur prior to reenactment. (See *Guardianship of Guidry* (1961) 196 Cal.App.2d 426, 430.) Although we have doubts about its continued applicability, we do not need to reach that issue and thus take no position on whether a petition can be resolved prior to the statutorily scheduled hearing based on a summary judgment motion alleging a filed objection did not challenge any triable issues of material fact supporting the petition. (See Prob. Code, §§ 1041 [requiring hearing be set when petition filed]; 1043 [allowing interested party to make oral objection at time of hearing]; 1046 [requiring the court hear and determine any matter at issue and any objection presented].)

section 431.20 but only tangentially imply that they challenged any particular aspect of the petition filed.  We focus on whether material facts in the petition were challenged, however, because the applicability of Code of Civil Procedure section 431.20 turns on this point, the dispute was raised before the probate court, and on appeal, appellants have properly alleged Code of Civil Procedure section 431.20 does not apply.  We thus begin with this initial question:  Did appellants challenge any material aspect of the petition?  We conclude they did.

*Overview of the Probate Code and Related Law*

To place the petition and response in context, particularly in light of the motion for summary judgment in this case, it is first important to outline the statutory hearing procedures.  Probate Code sections 1020 and 1021 require that petitions, objections, responses, reports, and accounts are to be signed, verified, and filed.  These requirements are imposed in part because, under Probate Code section 1022, an "affidavit or verified petition shall be received as evidence when offered in an uncontested proceeding."  Whenever one of these types of documents is filed and requires a hearing, the court is required to set and notice that hearing.  (Prob. Code, §§ 1041, 1042.)  An "interested person may appear and make a response or objection in writing at or before the hearing" (Prob. Code, § 1043, subd. (a)) or "may appear and make a response or objection orally at the hearing" (*id*., subd. (b)).  If an oral objection is made, the court must either resolve the oral objection or grant a continuance so that the objection can be made in writing.  (*Ibid*.)  Finally, the probate court "shall hear and determine any matter at issue and any response or objection presented."  (Prob. Code, § 1046.)  The Code of Civil Procedure fills any procedural gaps in the Probate Code.  (Prob. Code, § 1000, subd. (a).)

"Despite Probate Code section 1022, summary judgment proceedings in probate court are commonplace."  (*Key v. Tyler* (2019) 34 Cal.App.5th 505, 521.)  "When a petition is contested … 'affidavits and verified petitions may not be considered as

evidence at a contested probate hearing.' [Citation.] Rather, absent a stipulation among the parties to the contrary, each allegation in a verified petition and each fact set forth in a supporting affidavit must be established by competent evidence. [Citations.] This rule is consistent with the long-established rule of civil practice that ' "[a] party is entitled to have received in evidence and considered by the court, before findings are made, all competent, relevant and material evidence on any material issue." ' " (*In re Estate of Lensch* (2009) 177 Cal.App.4th 667, 676, third bracketed insertion in original.)[3]

When a petition is "contested" is not well defined. In *Forthmann v. Boyer* (2002) 97 Cal.App.4th 977, 985, the Court of Appeal implied contestation occurs when objections are filed and rejected a claim that discovery was proper without the filing of an objection. Such a conclusion generally matches the dictate in Probate Code section 1022 and the established rules of civil practice that affidavits and verified petitions are only admissible in uncontested proceedings. But, as *Forthmann* was focused on the point at which discovery could be ordered, no meaningful analysis on the definition of "contested" was included.

In *Mota v Superior Court* (2007) 156 Cal.App.4th 351, 356, another discovery case, the Court of Appeal explained, "A corollary of the *Forthmann* rule is that a beneficiary, having filed formal objections to a trustee's petition, may conduct discovery relevant to those objections. Unlike the beneficiary in *Forthmann*, Mota's objections created an issue of fact to be adjudicated by the court: whether Villalobos, Marcos, and Ponce stole money from the Trust. Accordingly, she was entitled to conduct discovery relevant to that issue." Although again based in discovery practices, the court's analysis

---

**3** We do not intend through this review of the law to resolve, nor do we express an opinion on, whether summary judgment can be utilized to prevent the probate court from holding the hearing contemplated by Probate Code section 1043 rather than directly resolve objections or ancillary disputes prior to that hearing. Nor do we take any position on whether the probate court could grant summary judgment on the underlying petition in this matter without resolving the objection filed by appellants—even if it were deemed meritless.

implies that issues within a petition are contested when specifically joined, a point in line with long-standing case law regarding the scope of a court's obligations to resolve disputes. (See *In re Estate of Clifford* (1936) 16 Cal.App.2d 123, 126 ["It is ordinarily true that all proper issues of facts joined in probate proceedings like any civil action must be determined and that the court should adopt appropriate findings respecting such issues."].)

The parties have not specifically briefed the issue of when a petition is properly contested. But we need not resolve that issue at this time because appellants meet both standards. We note that under the broader standard, reversal would be required because the probate court could not have relied on the verified petition to grant summary judgment once any form of contest was filed against the petition. Under the narrower view, we consider whether appellants raised a challenge to any material issue contained in the petition. As appellants did challenge a material issue contained in the petition, the court's conclusion there were no triable issues of material fact because appellants "admitted the material allegations in the petition by failing to controvert any of the allegations in their objection" was improper and reversal is required.

### *Application of the Law to the Objection Filed*

The petition asserted a limited set of facts which were adopted by the probate court when it granted summary judgment: (1) Honegger was the current trustee; (2) Hal validly executed powers of appointment contained within the trust instrument; and (3) the Survivor's Trust share comprised one-half of the combined Trust assets, while the Marital and Credit Trusts comprised the other one-half, such that the full trust could be apportioned between Sandra Crosby and St. Jude Children's Research Hospital. In order to prove these facts, Honegger relied upon the verified petition for information about the trust document, affidavits of counsel regarding Hal's intent and the status of the trust

15.

assets, and documents submitted with the summary judgment motion for proof Hal exercised his powers of appointment.

As noted above, appellants objected on the ground that such a distribution constituted a decanting or modification of the trust instrument for which proper notice had not occurred. Included within this objection was a request that the trust assets be accounted for within each subtrust and instructions regarding whether Hal could disinherit his children from any inheritance owed to them through his appointment powers.

The act of decanting a trust is governed by the Uniform Trust Decanting Act. (Prob. Code, § 19501 et. seq.) The decanting power is defined as "the power of an authorized fiduciary … to distribute property of a first trust to one or more second trusts or to modify the terms of the first trust." (Prob. Code, § 19052, subd. (j).) The statutory scheme generally covers transfers from irrevocable trusts, but expressly does not limit the ability "to distribute or appoint property in further trust or to modify a trust under the trust instrument, law of this state other than this part, common law, a court order, or a nonjudicial settlement agreement." (Prob. Code, § 19503, subds. (a), (d).) In other words, it is a defined power granted to a fiduciary to modify an existing trust, usually to pour funds from that trust into another, through means outside of the trust instrument itself.

Appellants' objection under the decanting statutes—although inartful as stated—challenged the trustee's ability to make the requested distribution without satisfying the decanting statute requirements. With the included request for an accounting of the subtrusts, the objection necessarily challenged the ability to transfer one-half of the proceeds to Sandra Crosby and one-half of the proceeds to St. Jude Children's Research Hospital. This contention thus placed in dispute any assertion that Hal's valid exercise of his appointing powers could result in an even split of the trust assets in a manner that

16.

excluded appellants. With the included request for instructions regarding Hal's purported disinheriting of appellants, the objection also challenged whether Hal had properly exercised his appointment powers through his attempted split of the assets.

The record further supports that these contentions were meaningful. The proffered language of the Trust Agreement does not indicate that the trusts created after Claudette's death and used during Hal's life would necessarily result in one-half of the assets remaining in the Survivor's Trust and one-half of the assets split between the Marital and Credit Trusts. Even if initially split equally, the trust instrument states that the Survivor's Trust is meant to provide the surviving spouse with income reasonably necessary for their maintenance and support while the Marital and Credit Trusts only provide quarterly installments of net income unless principal distributions are requested. The Trust Agreement further indicates that the settlors specifically recommended drawing from the Survivor's Trust first.

Should the subtrusts not be equally funded at the time of Hal's death, Hal's request to provide one-half of the total assets to Sandra Crosby and one-half of the total assets to St. Jude Children's Research Hospital could require modifying the terms of the Trust Agreement. Absent modification, appellants appear to be entitled to any portion of the irrevocable Marital and Credit Trusts that exceeds the one-half of the total assets that could be distributed if Hal's powers of appointment and specific split of funds were valid. And Sandra Crosby would be entitled only to the amount of funds properly remaining in the Survivor's Trust up to the one-half of trust assets purportedly left to her.

By claiming a failure to provide proper notice of a decanting and requesting an accounting of related subtrusts, appellants, at a minimum, placed in issue whether the appointing power could be properly exercised as Hal requested and whether properly complying with Hal's attempt to exercise those powers actually resulted in all trust funds being distributed to Sandra Crosby and St. Jude Children's Research Hospital. As these

17.

issues were essential to the relief requested in the original petition, there is no basis to conclude that the petition remained uncontested such that the probate court could either find no triable issues of material fact existed or rely upon affidavits and the verified petition as if the proceedings were uncontested.**4**

In opposition, Honegger alleges any argument that the express terms of the trust are not subject to powers of appointment is either forfeited for failure to argue below or merely wrong. We need not resolve this argument, however, because the underlying issue is not whether exercise of the powers of appointment is part of the trust instrument, but whether those powers were properly exercised under Hal's split of assets. Even assuming the powers of appointment are part of the trust instrument and properly allow the general actions taken by Hal, the factual dispute regarding the propriety of Hal's specific split of assets and its impact on funds that would otherwise have gone to appellants remains. As appellants properly challenged the proposed distribution through their claim that a decanting was required to execute the requested distribution, their purported failure to challenge the legal premise by which the distribution flowed does not prevent summary judgment.

Ultimately, although appellants' objection to the petition was poorly framed, it was minimally sufficient to challenge at least one of the core factual contentions supporting the petition. The probate court could not, therefore, grant summary judgment to Honegger based on the assertion appellants failed to contest any material facts alleged in the petition. We specifically note that our opinion here is narrowly drawn. We take no

---

**4** Because we conclude the summary judgment motion was improperly granted, we do not reach appellants' claims that the probate court wrongly failed to grant a continuance for further discovery or failed to conduct a sua sponte investigation into claims of undue influence prior to granting summary judgment. Likewise, we do not consider whether the court abused its discretion in denying leave to amend, as no leave was required to support some of appellants' discovery requests or to raise issues in opposition to the motion for summary judgment. Finally, by reversing the probate court's order, we need not consider appellants' alleged collateral attack on the judgment for lack of jurisdiction under the Uniform Trust Decanting Act.

position on whether the probate court could or should permit an expansion of the current petition, what scope of discovery is ultimately appropriate, whether appellants' allegations of error are provable, or any other issue tangential to reversing the summary judgment.

## DISPOSITION

The judgment is reversed.  The matter is remanded to the probate court for further proceedings consistent with this opinion.  Costs are awarded to appellants.


HILL, P. J.

WE CONCUR:


POOCHIGIAN, J.


MEEHAN, J.


19.